UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

LEXINGTON INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
AMERICAN INTERNATIONAL
UNDERWRITERS INSURANCE
COMPANY AND CHARTIS SPECIALTY
INSURANCE COMPANY,

           Plaintiffs,

       - against -

MGA ENTERTAINMENT, INC.,

          Defendant.
------------------------------------------------------- X

MGA ENTERTAINMENT, INC.,

          Counterclaimant,

     - against -

LEXINGTON INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
AMERICAN INTERNATIONAL
UNDERWRITERS INSURANCE
COMPANY, CHARTIS SPECIALTY
INSURANCE COMPANY, AND CRUM &
FORSTER SPECIALTY INSURANCE
COMPANY,

          Counterdefendants.
------------------------------------------------------- X

**MEMORANDUM
OPINION AND ORDER**

12 Civ. 3677 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Lexington Insurance Company ("Lexington"), National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), American International Underwriters Insurance Company ("AIU"), and Chartis Specialty Insurance Company ("Chartis") (collectively, "Plaintiffs") brought this action seeking a declaration that they were not obliged to defend or indemnify MGA Entertainment, Inc. ("MGA") in connection with an action brought against MGA in this Court,[1] *Bernard Belair v. MGA Entertainment, Inc.* ("Underlying Action").[2] On July 10, 2013, I granted MGA's motion for summary judgment ("Summary Judgment Opinion") in part on the ground that National Union and Chartis ("the Umbrella Insurers") had the duty to defend MGA in the Underlying Action because the extrinsic evidence produced did not conclusively eliminate the potential for

---

[1]      *See* Complaint ("Compl.") ¶ 8.

[2]      831 F. Supp. 2d 687 (S.D.N.Y. 2011), *aff'd*, 503 Fed. App'x 65 (2d Cir. 2012). This Court granted summary judgment to MGA in an action for copyright infringement brought by Bernard Belair, finding that only Belair's particular and original expression of "an absurdly large-headed, long limbed, attractive, fashionable woman" with heavy makeup was protectible, given that generally "exaggerated and idealized proportions are (distressingly) commonplace in both children's toys and the fashion industry." *Id.* at 698, 694. Accordingly, this Court found that Belair's images were not substantially similar to the Bratz line of absurdly-proportioned and heavily made-up dolls. *See id.* at 696.

coverage under the National Union commercial umbrella policy ("2001 Policy").[3] Specifically, the potential for coverage under the 2001 Policy could not be eliminated because a factual dispute exists regarding the first date of publication of the allegedly infringing Bratz material.[4]  The Umbrella Insurers now move for reconsideration.[5]

The Umbrella Insurers make one basic argument in support of their motion for reconsideration, namely, that the Court "overlooked undisputed material facts which establish that the allegedly infringing Bratz materials were first published in 2000."[6]  The Umbrella Insurers base this argument on three related arguments: *First*, that the Court's reliance on "evidence showing that the Bratz dolls were first sold in . . . 2001 and that Certificates of Registration from the Copyright Office reveal the date of publication . . . to be February 12, 2001 is misplaced" because such evidence does not "create an issue as to when the [allegedly infringing] sketches were first made known to the public for the purposes of the prior publication exclusion;" *second*, that the record "does not

---

[3]     *See* Summary Judgment Opinion at 39.

[4]     *See id.*

[5]     *See* the Umbrella Insurers' Motion for Reconsideration of the Summary Judgment Order ("Umbrella Insurers' Mem.").

[6]     *Id.* at 1.

support the conclusion that Crum & Forster Specialty Insurance Company

("C&F") disputes when the allegedly infringing materials were first published;"

and *third*, that MGA does not dispute that the first publication of the Bratz line

took place in 2000.[7] For the following reasons, the Umbrella Insurers' motion is

denied.

## II.    MOTION FOR RECONSIDERATION STANDARD

Motions for reconsideration are governed by Local Rule 6.3 and are

committed to the sound discretion of the district court.[8] "'[R]econsideration will

generally be denied unless the moving party can point to controlling decisions or

data that the court overlooked — matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court.'"[9] "Typical grounds for

reconsideration include 'an intervening change of controlling law, the availability

of new evidence, or the need to correct a clear error or prevent manifest

---

[7]      *See id.* at 3-4.

[8]      *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[9]      *United States v. Blumenberg*, No. 11 CR 3300, 2012 WL 6634066, at *2 (2d Cir. Dec. 21, 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (alteration in original)).

injustice.'"[10] Because "the purpose of Local Rule 6.3 is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters,'"[11] the Rule must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[12] Such motions should not be made reflexively to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[13] A motion for reconsideration is not an "opportunity for making new arguments that could have been previously advanced,"[14] nor is it a substitute for appeal.[15]

---

[10] *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 6326032, at *1 (S.D.N.Y. Dec. 16, 2011) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[11] *Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (quoting *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008)).

[12] *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotations omitted).

[13] *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[14] *Associated Press v. U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[15] *See Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*, No. 07 Civ. 3737, 2009 WL 274467, at *3 (S.D.N.Y. Oct. 6, 2008).

## III.   DISCUSSION

The Umbrella Insurers' motion fails because they have not demonstrated that this Court committed clear error or overlooked facts or controlling precedent that would have altered the outcome of the Summary Judgment Opinion.  Because each of the three grounds asserted by the Umbrella Insurers is based on the same argument – that this Court overlooked dispositive facts demonstrating that the first publication of allegedly infringing Bratz material was in 2000 – I address their argument in a single discussion in order to avoid repetition.

In finding a dispute regarding the first date of publication of the allegedly infringing Bratz material, the Umbrella Insurers argue that this Court mistakenly relied upon evidence showing that (1) Bratz dolls were first sold in the United States in 2001 and that (2) the sketches made by Carter Bryant ("Carter Bryant Sketches") bare a publication date of February 12, 2001. [16]  Such reliance was not mistaken.  As the Summary Judgment Opinion recognizes, under California law, the Umbrella Insurers could only defeat MGA's motion "by producing undisputed extrinsic evidence conclusively eliminating the potential for

---

[16]   *See* Umbrella Insurers' Mem. at 4.

coverage under the policy."[17]  As such, the Umbrella Insurers were required to

produce undisputed extrinsic evidence conclusively showing that the first date of

publication of the allegedly infringing Bratz products was 2000 and not 2001.  The

Umbrella Insurers argue that they did so because all of the evidence from 2000 –

*e.g.*, that the Carter Bryant Sketches bare a publication date of February 12, 2001,

and the December 2000 email to the Walmart buying agent ("2000 Email") makes

clear that the Carter Bryant Sketches were *not* meant to be made known to the

public at that time – is "irrelevant" for purposes of the prior publication

exclusion.[18]  Tellingly, the Umbrella Insurers do not explain why this evidence is

irrelevant, instead simply insisting that such evidence does not "create a dispute as

to when the Carter Bryant [S]ketches . . . were first made known to the public"[19]

for purposes of the prior publication exclusion.

But such evidence does create a dispute.  *First*, contrary to the

Umbrella Insurers' assertions, it is not "undisputed" that the Carter Bryant

Sketches were first published in 2001.  In its motion for summary judgment against

---

[17]     *Anthem Elec., Inc. v. Pacific Emp'rs Ins. Co.*, 320 F.3d 1049, 1060 (9th Cir. 2002).

[18]     *See* Umbrella Insurers' Mem. at 5-6; Summary Judgment Opinion at 13-14.

[19]     *See* Umbrella Insurers' Mem. at 6.

C&F, MGA based its argument that the prior publication should not bar coverage on the assumption that the "first publication of a Bratz image [was] in 2001."[20] *Second*, the evidence not disputed by MGA from the year 2000[21] does not conclusively establish that the first publication of Bratz material was in that year, even using the Umbrella Insurers' definition of "publication" – *i.e.*, to make known to the public. The evidence that was undisputed by MGA includes the following: (1) that the Bratz drawings were "first exhibited" in the United States in November 2000, when they were shown to "four or five" retailers;[22] (2) that an MGA employee emailed several of the Carter Bryant Sketches to a Walmart buying agent in 2000, explaining to the agent that they were for that agent's "**reference only**;"[23]

---

[20]    MGA's Memorandum of Law in Support of its Motion for Summary Judgment against C&F at 15.  Relatedly, the very language of C&F's memorandum of law in support of its cross-motion establishes that C&F disputes that the Bratz material was first published in 2000.  *See* C&F Memorandum in Support of its Cross-Motion, Dkt. 114 at 20 ("MGA expressly admits (as it must) that . . . the first publication of a Bratz image [was] in 2001.") (quotation marks omitted).

[21]    The Summary Judgment Opinion makes clear that this evidence was undisputed by MGA.  *See* Summary Judgment Opinion at 3 n.6, 12-15.

[22]    *See* MGA's Statement of Genuine Issues in Opposition to the Umbrella Insurers' Cross-Motion for Summary Judgment ("MGA 56.1 Statement"), Dkt. 122 at 11; Declaration of Mark Sheridan, counsel to the Umbrella Insurers ("Sheridan Decl."), at Ex. E 1979:11-25.

[23]    2000 Email, Ex. F to Sheridan Decl. (emphasis original).

-8-

and (3) that a then-MGA employee sent a Bratz sculpt to an outside vendor in 2000 in order to "pour a mold" of that sculpt.[24]

The Court did not overlook this evidence; rather, the Court disagreed with the Umbrella Insurers' argument that such evidence constitutes conclusive proof of a 2000 first publication date for purposes of the prior publication exclusion.[25] And rightfully so. To argue that Bratz material was "made known to the public" in 2000 because they were shown to a handful of retailers, emailed to a buying agent for that agent's reference, and sent to a vendor to have a "mold" made, is a stretch. Indeed, in the prior publication cases relied upon by this Court, material was considered first "published" when that material was distributed widely to the public – not when it was in its development phase.[26] As such, the fact that the evidence from 2000 was undisputed by MGA is irrelevant, because that evidence does not conclusively eliminate the possibility that the first date of publication was 2001. Accordingly, the Umbrella Insurers did not meet their burden of "producing undisputed extrinsic evidence conclusively eliminating the

---

[24]   Testimony of Margaret Leahy, Ex. H to Sheridan Decl. at 4154-4155.

[25]   *See* Summary Judgment Opinion at 39.

[26]   *See, e.g., Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1072 (7th Cir. 2004) (first publication of allegedly infringing commercials was when those commercials began running on television).

-9-

potential for coverage under the [2001 Policy]."[27]

## IV.    CONCLUSION

For the reasons stated above, the Umbrella Insurers' motion for reconsideration is denied.  The Clerk of the Court is directed to close the motion (Dkt. 133).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              August 7, 2013

---

[27]        *Anthem,* 320 F.3d at 1049.

-10-

- Appearances -

**For Plaintiffs and Counterdefendants**
**Lexington Insurance Company, National**
**Union Fire Insurance Company of**
**Pittsburgh, PA, American International**
**Underwriters Insurance Company, and**
**Chartis Specialty Insurance Company:**

Mark D. Sheridan, Esq.
Mark C. Errico, Esq.
Patton Boggs LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600


**For Defendant and Counterclaimant**
**MGA Entertainment, Inc:**

Michael J. Bidart, Esq.
Ricardo Echeverria, Esq.
Shernoff Bidart Echeverria Bentley LLP
600 S. Indian Hill Boulevard
Claremont, California 91711
(909) 621-4935

**For Counterdefendant Crum & Forster**
**Specialty Insurance Company:**

Susan J. Field, Esq.
Musick, Peeler & Garrett LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, California 90017
(213) 629-7886

-11-