UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

LEXINGTON INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
AMERICAN INTERNATIONAL
UNDERWRITERS INSURANCE
COMPANY AND CHARTIS SPECIALTY
INSURANCE COMPANY,

              Plaintiffs,

      - against -

MGA ENTERTAINMENT, INC.,

              Defendant.
------------------------------------------------------------ X

MEMORANDUM OPINION
AND ORDER

12 Civ. 3677 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

On July 10, 2013, I held that National Union Fire Insurance Company of Pittsburgh, PA ("National Union") had a duty to defend MGA Entertainment ("MGA")[1] in connection with a copyright infringement action brought by Bernard Belair against MGA in this Court (the "*Belair* action").[2] On August 8, 2013, I set a

---

    [1]    *See Lexington Ins. Co. v. MGA Entm't, Inc.*, 961 F. Supp. 2d 536, 558 (S.D.N.Y. 2013).

    [2]    *See Bernard Belair v. MGA Entm't, Inc.*, 831 F. Supp. 2d 687 (S.D.N.Y. 2011). This Court granted summary judgment to MGA in the *Belair* action.

1

discovery and briefing schedule on the issue of damages.[3]

On February 28, 2014, MGA moved for summary judgment against National Union, seeking $2,823,992.34 in attorneys' fees and costs incurred in the defense of the *Belair* action, plus prejudgment interest. On March 28, 2014, National Union cross-moved for summary judgment, arguing that MGA suffered no damages because it was not legally obligated to pay any amounts in connection with the *Belair* action due to a settlement between MGA and its law firms, Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden") and Orrick, Herrington & Sutcliffe, LLP ("Orrick"). In the alternative, National Union argues that MGA's damages award should be reduced in proportion to the amounts compromised in the Skadden and Orrick settlements.

After a telephone conference with the Court held on May 15, 2014, MGA produced cancelled checks and other documentation showing that it directly paid approximately $2.4 million of the total amount invoiced on the *Belair* action prior to the Skadden and Orrick settlements. National Union informed the Court on May 22, 2014 that it "has agreed to pay MGA the stipulated amount of $2,408,916.02 plus prejudgment interest in an amount to be calculated by the

---

[3] *See* Second Scheduling Order, No. 12 Civ. 3677 (Dkt. No. 138).

parties."[4] But the parties continue to dispute what obligation, if any, National Union has as to the remaining $415,076.32, which represents the amount outstanding on the *Belair* invoices at the time of MGA's global settlements with Skadden and Orrick.

## II.   BACKGROUND

In 2009, MGA retained Orrick to defend the *Belair* action and to replace Skadden as MGA's lead counsel in an unrelated action involving Mattel, Inc. (the "*Mattel* action").[5] In 2011, MGA replaced Orrick with Skadden as its counsel in both cases.[6] "During the course of the Belair and Mattel lawsuits, MGA became embroiled in disputes with both the Orrick and Skadden firms about their fees."[7] The total amount billed to MGA in legal costs pertaining to the defense of the *Belair* action was $2,823,992.34.[8] MGA paid $2,408,916.02 of that amount

---

[4]   5/22/14 Letter from Mark Sheridan, counsel for National Union, to the Court (Dkt. No. 161), at 1.

[5]   *See* MGA's Statement of Undisputed Material Facts ("MGA 56.1") ¶¶ 7-8.

[6]   *See id.* ¶ 9.

[7]   *Id.* ¶ 12.

[8]   *See* 2/28/14 Declaration of Stephen Schultz, Chief Financial Officer of MGA, ¶ 4.

3

directly to the law firms and vendors prior to the global settlements.[9]

On April 17, 2012 and June 23, 2013, MGA entered into confidential settlement agreements with Skadden and Orrick, respectively.[10] Both firms agreed to accept a fixed sum less than the outstanding unpaid invoices for both the *Mattel* and *Belair* actions.[11] The total outstanding balance owed to Skadden and Orrick for both actions was ▮.[12] The total amount paid by MGA to Skadden and Orrick as a result of the settlements was ▮, approximately ▮ of the total amounts owed.[13] The settlement agreements did not identify any specific written off invoices or time entries and did not allocate any specific amount as to the *Belair* or *Mattel* action.[14] The outstanding balance on invoices pertaining to the *Belair* action was $415,076.32.

---

[9] Evidence showing these payments have not been made a part of the record on this motion, but has been provided to National Union, who has reviewed the documentation and does not contest it. *See* 5/20/14 Letter from Sheridan to the Court (Dkt. No. 158), at 2-3, and 5/22/14 Letter from Sheridan, to the Court at 1.

[10] *See* MGA 56.1 ¶¶ 13, 15.

[11] *See id.*

[12] The settlement agreements are confidential and have not been included as part of the record, but the outstanding invoice amounts and settlement figures are undisputed. National Union Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment ¶¶ 12, 20.

[13] *See id.* ¶¶ 13, 21.

[14] *See* MGA 56.1 ¶¶ 14-16.

4

## III. APPLICABLE LAW

### A. Legal Standard

Summary judgment is appropriate "where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[15] In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[16] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[17]

### B. Damages for Breach of Duty to Defend

Under California law,[18] "the proper measure of damages" for an insurer's breach of the duty to defend, "is the reasonable attorneys' fees and costs

---

[15] *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[16] *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[17] *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[18] This case is governed by California law. *See Lexington*, 961 F. Supp. 2d at 548.

incurred by the insured in defense of the claim."[19]  Where "the insurer has breached its duty to defend, the [policyholder] must carry the burden of proof on the existence and amount of the . . . expenses, which are then presumed to be reasonable and necessary as defense costs."[20]  "'[D]amages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.'"[21]

## IV. DISCUSSION

National Union does not dispute the reasonableness of the legal expenses incurred in the *Belair* action.[22]  Rather, National Union contends that MGA is not entitled to the outstanding $415,076.32 because that amount was compromised as part of the settlements with Skadden and Orrick.  MGA asserts that once National Union was found to have breached its duty to defend, it became liable for the "amounts that MGA incurred to defend the *Belair* action" and any

---

[19]   *Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928, 961 (2003).

[20]   *Aerojet-Gen. Corp. v. Transportation Indem. Co.*, 17 Cal. App. 4th 38, 64 (1997).

[21]   *Wallis v. Centennial Ins. Co. Inc.*, No. 08 Civ. 2558, 2013 WL 6000974, at *13 (E.D. Cal. Nov. 12, 2013) (quoting *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001)).

[22]   3/28/14 National Union's Brief in Opposition to Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment, at 1.

"discount [obtained from counsel] should not inure to the benefit of an insurance company that is in breach of its defense obligations."[23]  In sum, MGA argues that the Skadden and Orrick settlements are irrelevant for the purposes of determining its damages.

MGA's only case law in support of this argument is a 1957 California Supreme Court case holding that a policyholder does not have to "actually 'pay' the defense costs before it can recover them from a breaching insurer."[24]  In that case, the court held that an insurer was obligated to pay the full amount of billed attorneys' fees even though counsel testified that he did not ever expect to be fully paid by his clients, the policyholders.  The court explained that an insurer who has a duty to defend "will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel."[25]  But this case is inapposite because MGA has already fully satisfied its obligations to pay its attorneys.  MGA cites no case, and I was not able to find one, where the policyholder fully paid its attorneys and the

---

[23]   2/28/14 Memorandum of Points and Authorities in Support of MGA Entertainment Inc.'s Motion for Summary Judgment ("MGA Mem."), at 1.

[24]   *Id.* at 6-7 (citing *Arenson v. National Auto. & Cas. Ins. Co.*, 48 Cal. 2d 528, 539 (1957)).

[25]   *Arenson*, 48 Cal. 2d at 539.

insurer was required to pay *more* than the policyholder actually paid.

MGA did, at some time, incur $2.8 million in legal bills pertaining to the *Belair* matter. MGA is undisputedly owed the $2.4 million it actually paid. But the Skadden and Orrick settlements cannot be ignored. MGA has *also paid* ▌ to its attorneys – some of which *must be* allocated to the *Belair* action. The only issue is how much.

The remaining *Belair* balance – $415,076.32 – was included in a legal settlement that compromised MGA's obligations to its law firms by ▌. As to the *Belair* balance, MGA "incurred" and actually paid the attorneys' fees it agreed to pay as a result of its settlements.

National Union argues that it is not required to pay any of the balance because MGA has not proven what it was actually obligated to pay as part of the settlements. MGA concedes that its settlements did not indicate which invoices were written off entirely or in part. Rather, MGA argues that because the outstanding balance on the *Belair* action represents only ▌ of the total amounts compromised in the settlements, "there is every reason to believe that the write offs came from the *Mattel* bills – not the ones from *Belair*" and thus, National Union owes the entirety of the remaining *Belair* balance.[26]

---

[26]   4/18/14 MGA's Opposition to National Union's Cross-Motion for Summary Judgment and Reply in Support of Its Motion for Summary Judgment, at

While the agreements do not allocate figures between *Mattel* and *Belair*, MGA has proven that it owed at least *some amount* on the outstanding *Belair* bills at the time of the settlement. MGA is entitled to a proportional recovery, but not the entirety of the remaining *Belair* balance.[27] Because the total bill was reduced by ███, MGA is entitled to ███ of the outstanding *Belair* balance, or ███ plus prejudgment interest, to be calculated from the date of the settlement.

## VI.  CONCLUSION

For the foregoing reasons, National Union is directed to pay MGA ███ in addition to the $2,408,916.02 it has already agreed to pay, plus prejudgment interest. The Clerk of the Court is directed to close these motions [Docket Nos. 139, 146].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         June 3, 2014

---

1.

[27]  MGA's argument that the proportionately small amount of the *Belair* balance shows that it was not written off at all is unconvincing because the opposite inference is at least as logical.

-Appearances-

**For Plaintiffs and Counterdefendants National Union Fire Insurance Company of Pittsburgh, PA:**

Mark D. Sheridan, Esq.
Mark C. Errico, Esq.
Patton Boggs LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600

**For Defendant and Counterclaimant MGA Entertainment, Inc:**

Michael J. Bidart, Esq.
Ricardo Echeverria, Esq.
Shernoff Bidart Echeverria Bentley LLP
600 S. Indian Hill Blvd.
Claremont, California 91711
(909) 621-4935