UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

LEXINGTON INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
AMERICAN INTERNATIONAL
UNDERWRITERS INSURANCE
COMPANY AND CHARTIS SPECIALTY
INSURANCE COMPANY,

                 Plaintiffs,

                - against -

MGA ENTERTAINMENT, INC.,

                 Defendant.
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/10/14

MEMORANDUM OPINION
AND ORDER

12 Civ. 3677 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

On July 10, 2013, I held that National Union Fire Insurance Company of Pittsburgh, PA ("National Union") had a duty to defend MGA Entertainment ("MGA")[1] in connection with a copyright infringement action brought by Bernard Belair against MGA in this Court (the "*Belair* action").[2] On August 8, 2013, I set a

---

[1] *See Lexington Ins. Co. v. MGA Entm't*, 961 F. Supp. 2d 536, 558 (S.D.N.Y. 2013).

[2] *See Bernard Belair v. MGA Entm't, Inc.*, 831 F. Supp. 2d 687 (S.D.N.Y. 2011). This Court granted summary judgment to MGA in the *Belair* action.

discovery and briefing schedule on the issue of damages, which is the subject of this Order.[3]

## II. BACKGROUND

In 2009, MGA retained Orrick, Herrington & Sutcliffe, LLP ("Orrick") to defend the *Belair* action and to replace Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden") as MGA's lead counsel in an unrelated action involving Mattel, Inc. (the "*Mattel* action").[4] In 2011, MGA replaced Orrick with Skadden as its counsel in both cases.[5] "During the course of the Belair and Mattel lawsuits, MGA became embroiled in disputes with both the Orrick and Skadden firms about their fees."[6] The total amount billed to MGA in legal costs pertaining to the defense of the *Belair* action was $2,823,992.34.[7]

On April 17, 2012 and June 23, 2013, MGA entered into confidential settlement agreements with Skadden and Orrick, respectively.[8] Both firms agreed

---

[3] *See* Second Scheduling Order, No. 12 Civ. 3677 (Dkt. No. 138).

[4] *See* MGA's Statement of Undisputed Material Facts ("MGA 56.1") ¶¶ 7-8.

[5] *See id.* ¶ 9.

[6] *Id.* ¶ 12.

[7] *See* 2/28/14 Declaration of Stephen Schultz, Chief Financial Officer of MGA, ¶ 4.

[8] *See* MGA 56.1 ¶¶ 13, 15.

to accept a fixed sum less than the outstanding unpaid invoices for both the *Mattel* and *Belair* actions.[9] The settlement agreements did not identify any specific written off invoices or time entries and did not allocate any specific amount as to the *Belair* or *Mattel* action.[10]

Following the July 10, 2013 Opinion and Order, MGA moved for summary judgment, seeking the full amount of $2,823,992.34 in attorneys' fees and costs incurred in the defense of the *Belair* action, plus prejudgment interest. National Union cross-moved for summary judgment, arguing that MGA suffered no damages because it was not legally obligated to pay any amounts in connection with the *Belair* action due to the Skadden and Orrick settlements. In the alternative, National Union argued that MGA's damages award should be reduced in proportion to the amounts compromised in the Skadden and Orrick settlements.

After a telephone conference with the Court held on May 15, 2014, MGA produced cancelled checks and other documentation showing the payments it made as to the *Belair* action prior to the Skadden and Orrick settlements.[11] On

---

[9]   *See id.*

[10]  *See id.* ¶¶ 14-16.

[11]  Evidence showing these payments have not been made a part of the record on this motion, but has been provided to National Union, who has reviewed the documentation and does not contest it. *See* 5/20/14 Letter from Mark Sheridan, counsel for National Union, to the Court (Dkt. No. 158), at 2-3, and 5/22/14 Letter

May 22, 2014, National Union informed the Court that it "has agreed to pay MGA the stipulated amount of $2,408,916.02 plus prejudgment interest in an amount to be calculated by the parties."[12] The stipulated figure represents both the amounts MGA paid directly to its law firms and vendors as to the *Belair* action prior to the settlements, and a proportional allocation of the global settlements as to the *Belair* action. But the parties continue to dispute what obligation, if any, National Union has as to the remaining $415,076.32, which represents the difference between the total amount billed on the *Belair* action and the stipulated figure.

## III. APPLICABLE LAW

### A. Legal Standard

Summary judgment is appropriate "where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[13] In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed

---

from Sheridan to the Court (Dkt. No. 161), at 1.

[12] 5/22/14 Letter from Sheridan to the Court, at 1.

[13] *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

issues of fact but to assess whether there are any factual issues to be tried."[14]

"'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[15]

### B. Damages for Breach of Duty to Defend

Under California law,[16] "the proper measure of damages" for an insurer's breach of the duty to defend, "is the reasonable attorneys' fees and costs incurred by the insured in defense of the claim."[17] Where "the insurer has breached its duty to defend, the [policyholder] must carry the burden of proof on the existence and amount of the . . . expenses, which are then presumed to be reasonable and necessary as defense costs."[18] "'[D]amages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for

---

[14] *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[15] *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[16] This case is governed by California law. *See Lexington*, 961 F. Supp. 2d at 548.

[17] *Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928, 961 (2003).

[18] *Aerojet-Gen. Corp. v. Transportation Indem. Co.*, 17 Cal. App. 4th 38, 64 (1997).

recovery.'"[19]

## IV. DISCUSSION

MGA argues that once National Union was found to have breached its duty to defend, it became liable for the "amounts that MGA incurred to defend the *Belair* action" and any "discount [obtained from counsel] should not inure to the benefit of an insurance company that is in breach of its defense obligations."[20] In sum, MGA argues that the Skadden and Orrick settlements are irrelevant for the purposes of determining its damages and that it is entitled to the full amount billed on the action.

MGA's only case law in support of this argument is a 1957 California Supreme Court case holding that a policyholder does not have to "actually 'pay' the defense costs before it can recover them from a breaching insurer."[21] In that case, the court held that an insurer was obligated to pay the full amount of billed attorneys' fees even though counsel testified that he did not ever expect to be fully

---

[19] *Wallis v. Centennial Ins. Co. Inc.*, No. 08 Civ. 2558, 2013 WL 6000974, at *13 (E.D. Cal. Nov. 12, 2013) (quoting *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001)).

[20] 2/28/14 Memorandum of Points and Authorities in Support of MGA Entertainment Inc.'s Motion for Summary Judgment, at 11.

[21] *Id.* at 6-7 (citing *Arenson v. National Auto. & Cas. Ins. Co.*, 48 Cal. 2d 528, 539 (1957)).

6

paid by his clients, the policyholders. The court explained that an insurer who has a duty to defend "will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel."[22] But this case is inapposite because MGA has already fully satisfied its obligations to pay its attorneys. MGA cites no case, and I was not able to find one, where the policyholder fully paid its attorneys and the insurer was required to pay *more* than the policyholder actually paid.

MGA did, at some time, incur $2.8 million in legal bills pertaining to the *Belair* matter. But this is not the amount it ultimately spent defending the action. Thus, MGA is owed no more than the $2.4 million it actually paid – a figure that includes the amounts paid before the settlements and a proportional allocation of the settlement to the *Belair* action.

## VI. CONCLUSION

For the foregoing reasons, National Union is directed to pay MGA $2,408,916.02, plus prejudgment interest in the amount of $482,549.64.

---

[22]    *Arenson*, 48 Cal. 2d at 539.

SO ORDERED:

/s/ Shira A. Scheindlin
Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         June 10, 2014

## -Appearances-

**For Plaintiffs and Counterdefendants National Union Fire Insurance Company of Pittsburgh, PA:**

Mark D. Sheridan, Esq.
Mark C. Errico, Esq.
Patton Boggs LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600

**For Defendant and Counterclaimant MGA Entertainment, Inc:**

Michael J. Bidart, Esq.
Ricardo Echeverria, Esq.
Shernoff Bidart Echeverria Bentley LLP
600 S. Indian Hill Blvd.
Claremont, California 91711
(909) 621-4935