UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

LEXINGTON INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
AMERICAN INTERNATIONAL
UNDERWRITERS INSURANCE
COMPANY AND CHARTIS SPECIALTY
INSURANCE COMPANY

$\qquad$ **Plaintiffs,**
    **- against -**

**MGA ENTERTAINMENT, INC.,**

$\qquad$ **Defendant.**

------------------------------------------------------- X

**OPINION AND ORDER**

**12-cv-3677 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

On July 10, 2013, I ruled that National Union was contractually

obligated to defend MGA against a copyright suit brought by Bernard Belair (the

"*Belair* action").[1]  This ruling entitled MGA to recover attorneys' fees incurred in

connection with the *Belair* action.  However, because MGA settled with its

attorneys for an amount less than originally billed, National Union's exact

obligation to MGA remained a source of dispute.  The issue was litigated.  On June

---

[1]     *See Lexington v. MGA*, 961 F. Supp. 2d 536 (2013).

10, 2014, I ruled that National Union was required to pay MGA a total of $2.4 million, plus prejudgment interest.[2]

On May 21, 2014, I permitted MGA to file an amended answer, which it did on June 6, 2014.  The amended answer contained a new counterclaim, alleging that National Union breached its duty of good faith and fair dealing, which California law incorporates into all insurance contracts, when it unreasonably delayed MGA's recovery in connection with my July 2013 ruling.  On June 13, 2014, National Union moved to dismiss MGA's counterclaim.  For the reasons set forth below, its motion to dismiss is DENIED.

## II.    STANDARD OF REVIEW

Motions to dismiss are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The question is whether the moving party's allegations "plausibly give rise to an entitlement for relief."[3]  In assessing this question, the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[4]

---

[2]    *See Lexington v. MGA*, No. 12-cv-3677, 2014 WL 2604007 (Jun. 10, 2014).

[3]    *Taveras v. UBS*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[4]    *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir.

## III.   APPLICABLE LAW

"A district court sitting in diversity applies the law of the forum state."[5]  When a case has been transferred under 28 U.S.C. § 1404, the "forum state" is the state where the action was originally filed—here, California.[6]

Under California law, "every contract, including insurance policies, [implies] a covenant of good faith and fair dealing."[7]  This duty is violated "When [an] insurer unreasonably [] withholds payment of the claim of its insured," and the violation can give rise to "liability in tort."**[8]**  One way that insurers can unreasonably withhold payment is—as alleged here—to dispute the amount owed "without proper cause."[9]  Whether such cause exists is a question of fact.  "Insurers [are] not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the [insured], a jury could conclude that the insurer acted

2007)).

[5]      *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 723 (S.D.N.Y. 2003).

[6]      *See id*.

[7]      *Wilson v. 21st Century Ins.*, 42 Cal.4th 713, 720 (2007).

[8]      *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal.3d 208, 214-15 (1986).

[9]      *Gruenberg v. Aetna*, 9 Cal.3d 566, 571 (1973).  *Accord Neal v. Farmer Ins.*, 21 Cal.3d 910, 921 (1978).

3

unreasonably."[10]

The duty of good faith and fair dealing under California insurance law has an almost-fiduciary quality. It requires insurers to "diligently search for evidence which supports [an] insured's claim,"[11] instead of "just focus[ing] on those facts which justify the denial of the claim."[12] When deciding if there is genuine dispute about the amount owed, insurers must "give at least as much consideration to the interests of the insured as it gives to [their] own interests."[13]

## IV.    DISCUSSION

On July 10, 2013, I ruled that National Union was contractually required to defend MGA in the *Belair* action. Accordingly, from that date forward, it was clear that MGA was entitled to *some* recovery from National Union. But the amount of that recovery was disputed. The difficulty was that MGA had entered into a settlement agreement with its attorneys, giving rise to a possible disparity between the amount that MGA was billed, and the amount it actually paid, in

---

[10]    *Wilson*, 42 Cal.4th at 723-24.

[11]    *Mariscal v. Old Republic Life Ins.*, 42 Cal.App.4th 1617, 1623 (1996).

[12]    *Wilson*, 42 Cal.4th at 729.

[13]    *Id.* at 720.

connection with the *Belair* action.  MGA sought the entire amount it had been invoiced by its attorneys—approximately $2.8 million—while National Union sought proof, in light of MGA's settlement with its attorneys, of what MGA had actually paid.

### A.    MGA's Good Faith and Fair Dealing Claim

MGA's allegations are as follows.  On July 13, 2013, it "demanded [that] National Union pay for the defense of the *Belair* action," but National Union refused to pay.[14]  By October 2013, MGA had "provided National Union documentation from MGA's accounting department evidencing that it had invoiced over $2.8 million and had paid over $1.2 million for the defense of the *Belair* action."[15]  National Union still refused to pay.  Finally, on April 1, 2014, after both parties had filed cross-motions for summary judgment in the pending litigation, MGA "again demanded that National Union pay for the defense of the *Belair* action."[16]  And once again, National Union paid nothing.  It was not until May 22, 2014 that National Union finally agreed to pay MGA pursuant to my July 2013

---

[14]    Defendant's Amended Answer ("Answer") ¶ 26.

[15]    *Id.*

[16]    *Id.*  ¶ 31.

ruling.[17]

MGA argues that once a significant portion of the attorneys' fees it paid in connection with the *Belair* action became indisputable, National Union had an obligation to promptly reimburse MGA for that portion—even if the rest of its obligation remained a source of disagreement.  National Union did not do this.  Instead, it refused to pay MGA anything until the dispute over the total amount was resolved.  National Union maintains that this decision was justified because the underlying dispute was reasonable.  It argues that under California law, it is "per se reasonable" for an insurer to "withhold[] payment of policy benefits" when there is a "genuine dispute over the amount owed."[18]  Thus, National Union contends that MGA's claim fails as a matter of law.

Under MGA's legal theory, however, the relevant question is not whether it is reasonable for an insurer to withhold payment when a genuine dispute exists about the amount owed.  The question is whether it is reasonable for an

---

[17]    Notably, National Union made this promise only *after* I granted MGA leave to amend its answer to include the good faith and fair dealing claim at issue here.  *See* Answer ¶¶ 33-34.  According to National Union, MGA furnished National Union proof of payment on May 16, 2014, and National Union "stipulated to the amount 'paid' on May 19, 2014."  Plaintiff's Memorandum in Support of Motion to Dismiss ("Pl. Mem."), at 14.  It was not until three days later, however, that National Union actually "agreed to pay the stipulated amount."  *Id.*

[18]    Pl. Mem. at 2.

insurer to withhold *all* payment when its obligations are divisible into undisputed and disputed portions.  In other words, if it is clear that the insurer owes Amount One, but there is disagreement about whether the insurer *also* owes Amount Two, is the insurer allowed to withhold payment of both amounts until the disagreement about Amount Two is resolved?

     For National Union to prevail as a matter of law, it  must establish one of two things.  First, it could establish that California law does not recognize a distinction between undisputed and disputed insurance obligations.  Second, it could establish that MGA has not adduced "plausible" evidence of an *undisputed* insurance obligation by National Union.  On both fronts, National Union's arguments fail.[19]

---

[19]    In addition to these arguments, National Union also claims that no duty of good faith and fair dealing attached to its conduct after my July 2013 ruling, making MGA's claim defective as a matter of law.  The gist of the argument is that my July 2013 ruling effectively transformed the legal relationship between National Union and MGA: National Union ceased to be an insurer bound by a contract, and instead became a creditor bound by an adverse judgment—a role that carries no duty of good faith and fair dealing.  In support of this theory, National Union cites a California case in which the plaintiff, having prevailed on a claim for breach of an insurance contract, tried to bring a good faith and fair dealing claim against the defendant for failing to pay out the judgment in the underlying suit.  The court barred the plaintiff's claim on the theory that "the obligation of 'good faith' does not exist independent of an express contractual obligation," and a "judgment for damages replaces the defendant's duty to perform the contract."  *Tomaselli v. Transamerica Ins. Co.*, 31 Cal.Rptr.2d 224, 226-27 (1994).  National Union suggests that the same logic should apply here.  But this argument is misplaced.  My July 2013 ruling was not a judgment for damages.  It

### B.      *Neal v. Farmers Insurance Company*

The central authority for MGA's legal theory is a 1978 California Supreme Court case called *Neal v. Farmers Insurance Company*.[20]  After suffering injuries in a car accident and incurring medical bills, Neal sought reimbursement from Farmers.  Neal had two policies, a medical policy that paid out a maximum of $5,000, and an uninsured motorist policy that paid out a maximum of $15,000.  In response to Neal's request, Farmers agreed on August 11, 2014 to pay out Neal's medical policy—for $5,000—but refused to pay out her uninsured motorist policy, arguing that its obligation under the uninsured motorist policy could be offset against the $5,000 it paid out under Neal's medical policy.  In response, Neal offered to settle her claim for $10,000—the amount in excess of the maximum possible offset—while reserving her right to seek the remaining $5,000 at a later date, once the offset question had been resolved.  Farmers rejected the settlement, maintaining its stance that Neal was entitled to nothing until the full amount of its obligation was determined.

The matter was sent to arbitration, and Farmers was required to pay

---

was a determination about the scope of National Union's contractual obligations. Far from replacing National Union's duty to perform on its contract with MGA, my July 2013 ruling confirmed that National Union is and was required to perform on its contract with MGA.

[20]      21 Cal.3d 910, 921 (1978).

out the entire $15,000 of Neal's uninsured motorist policy.  Neal subsequently filed suit against Farmers for breach of good faith and fair dealing, arguing that Farmers should have accepted her settlement terms.  The jury agreed.  It awarded Neal both compensatory and punitive damages.  On appeal, the California Supreme Court sustained both awards, emphasizing the fact that Farmers "had no colorable defense to [Neal's] claim under the uninsured motorist [] policy, and that the only genuine issue was that of the availability of an offset for the $5,000 paid by it under the medical payment provisions."[21]

MGA's reliance on *Neal* is sound.  The factual predicate of MGA's argument, like Neal's argument, is that a portion of its insurance entitlement was definitively established before the full value of that entitlement became clear.  And the two arguments also rest on the same theory of liability: it is unlawful for an insurer to continue to withhold all payment once some portion of an insured's entitlement is undisputed.  Although National Union makes numerous attempts to distinguish *Neal* on legal grounds, none succeeds.[22]

---

[21]    *Id.*

[22]    To be sure, there is at least one important difference between *Neal* and the present case.  In *Neal*, the undisputed portion of Farmers' obligation was unambiguous.  Whether or not Farmers was legally required to pay out some portion of Neal's uninsured motorist policy before the overall dispute was resolved, it was clear to everyone—presumably even to Farmers—that the portion in question was $10,000.  Here, by contrast, is not entirely clear *what* amount

*First*, National Union argues that *Neal* "dealt only with the sufficiency of the evidence presented to the jury . . . and it did not [] opine on the issue of bad faith in way that might apply" to other cases.[23]  But *Neal*'s holding is not so limited. Neal's legal theory—and Farmers's resulting liability—required the court to recognize that insurers can be liable for bad faith if they refuse to pay the undisputed portion of an obligation, even in cases where another portion of the obligation *is* disputed.

*Second*, National Union argues that "Neal relied primarily on the insurer's failure to accept [a] reasonable settlement offer, which not only represented a compromise of its initial demand, but was also less than the amount for which the insurer was ultimately held liable."[24]  This, National Union argues, stands in contrast to the present case, where "MGA [] never made a settlement

---

MGA believes it was owed.  MGA's pleading implies that the undisputed amount was approximately $1.2 million.  To recover on its bad faith claim, MGA will have to provide proof of what it was owed, and when.  Ultimately, however, that will likely raise a disputed issue of fact.  The uncertainty of the amount owed to MGA may cause it to fail at the end of the day in its effort to prove bad faith, but it does not permit judgment as a matter of law.

[23]  Plaintiff's Reply Memorandum in Support of Motion to Dismiss ("Reply Mem."), at 9-10.

[24]  *Id.* at 10.

demand less than the amount National Union [was ultimately required to pay]."[25]

The presence or absence of a settlement offer, however, is beside the point.

Farmers did not act in bad faith because Neal's settlement offer was reasonable.

Rather, Neal's settlement offer was reasonable because a portion of Farmer's

obligation was undisputed.

*Third*, National Union argues that "the *Neal* court's ruling on punitive

damages was also based [] on facts not alleged in this case."[26]  Specifically, it

points to evidence that (1) Farmers had implemented a "broad policy designed to

exploit its [customers],"[27] and (2) that Neal suffered "appreciable hardship while

awaiting payment of [her] policy benefits."[28]  National Union argues that neither

circumstance is present here.  While this may be so, it is irrelevant to MGA's

claim.[29]

### C.    The Plausibility of MGA's Claim

---

[25]    *Id.*

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

[29]    Bad faith does not depend on the presence or absence of a plaintiff's "appreciable hardship."  Accepting that proposition would mean that bad faith cannot be found unless an insured suffered "appreciable" harm from the insurer's wrongful conduct.  Not surprisingly, defendant has cited no case that embraces such a rule.

National Union also takes issue with MGA's factual allegations.  It rejects the proposition that a portion of its obligation was undisputed in the wake of my July 2013 ruling.  Rather, National Union argues that the entire amount was disputed because MGA supplied National Union with nothing more than internal company spreadsheets as proof of the attorneys' fees it incurred.  Although the spreadsheets made note of payment, they did not prove that any money had changed hands.[30]  In this respect, National Union argues that its refusal to pay MGA until May 22, 2014 was "caused by MGA's own doing."[31]  According to National Union, not only did MGA fail at the outset to provide sufficient evidence of the attorneys' fees it paid in connection with the *Belair* action; it also balked at requests for further information.[32]

Ultimately, National Union's version of events may prove more compelling than that advanced by MGA.  But at this stage, I must accept MGA's version as true.  Its claim should survive as long as its factual allegations support a

---

[30]    *See* Reply Mem. at 4-7.

[31]    *Id.* at 4.

[32]    *See id.* at 5.  Specifically, National Union argues that in the interim between my July 2013 ruling and May 2014, it served MGA with interrogatories and document requests in order to determine how much was owed, but that MGA failed to comply with these requests.  *See id.* at 5 n.2.

"reasonable inference that the defendant is liable for the misconduct alleged."[33] The Supreme Court has been quite explicit that the plausibility inquiry "is not akin to a probability requirement."[34]  The question before this court is not whether MGA is likely to prevail on the merits.  The question is whether MGA's claim—that National Union acted in bad faith when it failed to promptly reimburse some portion of MGA's attorney's fees after my July 2013 ruling—is "plausible on its face."[35]  If so, further factual development is warranted.

National Union construes the plausibility requirement differently.  It argues that "the court need only accept MGA's *plausible* facts as true, and . . . MGA cannot plausibly allege that the single-page spreadsheets without any supporting documentation are sufficient to establish proof of payment."[36]  The purpose of the plausibility inquiry, however, is not to assess whether each allegation, in isolation, counts as a "plausible fact."  The purpose is to determine whether *all* the allegations, viewed in aggregate, taken as true, and measured against the relevant legal standard, lead to a "reasonable inference that the

---

[33]    *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 544, 556 (2007)).

[34]    *Id.*

[35]    *Id.*

[36]    Reply Mem. at 8.

defendant is liable for the misconduct alleged."[37]

MGA's claim clears that hurdle.  MGA alleges that "by October 2013, MGA [had] provided National Union documentation from MGA's accounting department evidencing that it had been invoiced over $2.8 million and had paid over $1.2 million" in connection with the *Belair* action, but that National Union refused to reimburse MGA any amount.[38]  Assuming, as I must, that this allegation is true, it is plausible to infer that National Union acted in bad faith.  As an insurer, National Union was not permitted to withhold payment from MGA if it was clear that payment was due.  And in order to *determine* if payment was due, National Union had an obligation to "diligently search for evidence [that] support[ed] [MGA's] claim."[39]  In fact, an insurer's obligation to investigate claims by an insured is especially pressing in a case like this one, where it is obvious that some amount is due—the only question is how much.[40]

---

[37]     *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 544).

[38]     Answer ¶ 27.

[39]     *Mariscal*, 42 Cal.App.4th at 1623.

[40]     National Union argues that it is "conceivable" that MGA paid *no* attorneys' fees "because the total amount compromised in the settlements [between MGA and its law firms] was greater than the amount billed in connection with the *Belair* action," making it theoretically possible that the settlements wiped out all of MGA's fees for the *Belair* action.  Reply Mem. at 5.  But this argument does not justify a presumption that nothing was owed.  The far more realistic possibility was

## VI.   CONCLUSION

   For the foregoing reasons, National Union's motion to dismiss is

DENIED.  The Clerk of the Court is directed to close this motion (Dkt. No. 173).


         SO ORDERED:


         Shira A. Scheindlin
         U.S.D.J.

Dated:  New York, New York
     August 13, 2014

---

that some portion of fees in connection with the *Belair* action had been wiped out, but not all of them.  On that assumption—surely the more likely one—National Union still would have been obligated to "diligently search for evidence [that] support[ed] [MGA's] claim." *Id.*

**- Appearances -**

**For Plaintiffs:**

Mark C. Errico, Esq.
Mark D. Sheridan, Esq.
Patton Boggs, LLP(NJ)
The Legal Center, One Riverfront Plaza
1037 Raymond Boulevard, Suite 6
Newark, NJ 07102
(973) 848-5600

**For Defendant:**

Michael J. Bidart, Esq.
Ricardo Echeverria, Esq.
Shernoff, Bidart, Darras
600 South Indian Hill Boulevard
Claremont, CA 91711
(909) 621-4935